STATE OF NORTH CAROLINA
v.
GREGORY R. CHAPMAN

No. COA11-229-2

Filed 6 August 2013

**Homicide—first-degree murder—born-alive rule—viability of twins—jury issue**

The trial court's order dismissing indictments for two counts of first-degree murder was vacated. A jury, not the trial court, should have been charged with deciding whether the twins, who were in

a pregnant woman's stomach when she was shot, met the requirements under the born-alive rule.

Appeal by the State from dismissal order entered 23 December 2010 by Judge Russell J. Lanier, Jr., in Duplin County Superior Court. Heard in the Court of Appeals 13 September 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel Shatz, for defendant.*

ELMORE, Judge.

This case is before us on remand from the North Carolina Supreme Court pursuant to the granting of the State's petition for writ of certiorari for consideration of the merits. The State appeals from an order dismissing two counts of capital first-degree murder against Gregory R. Chapman (defendant). In an opinion dated 7 February 2012, we dismissed the State's appeal on procedural grounds. Upon review once more, we vacate the order dismissing the indictments for first-degree murder.

The facts as established in our 7 February opinion are as follows: On 26 May 2008, defendant shot Lisa Wallace once in her left upper abdomen. Wallace was nineteen weeks and four or five days pregnant with twins. The bullet did not enter Wallace's uterus. Wallace was taken to Pitt County Memorial Hospital, where she had emergency surgery; following the surgery, Wallace underwent a spontaneous abortion of both twins. Wallace survived. Following the spontaneous abortion, both twins had heartbeats, and they were each assigned an Apgar score of one; neither twin scored on the other four factors that comprise an Apgar score – respiration, color, movement, and irritability. The first twin was delivered at 4:42 p.m., weighed 336 grams, and was pronounced dead at 5:10 p.m. when his heartbeat stopped. The second twin was delivered at 4:49 p.m., weighed 323 grams, and was pronounced dead at 5:20 p.m. when her heartbeat stopped.

Certificates of live birth were issued for each twin. Death certificates were also issued, and both the death certificates and the medical examiner's report listed the immediate cause of death for each twin as "previable prematurity." The medical experts who testified at the habeas corpus hearing all agreed that a previable newborn cannot maintain life outside

of the mother's womb, regardless of medical intervention. No medical expert opined that the twins were viable at their gestational age or weight.

Defendant was charged capitally with two counts of first-degree murder for the death of the twins, who were named as the victims on the indictment. He was also charged with possession of a firearm by a felon, assault with a deadly weapon with the intent to kill inflicting serious injury, and discharging a weapon into occupied property. Under the pretrial release order for the two first-degree murder charges, defendant's release on bond was not authorized. However, under the pretrial release orders for the other three charges, bond was set at $2.5 million.

On 23 November 2009, defendant applied for a pre-trial writ of habeas corpus, seeking "to remove the restraint of his liberty with respect to his being held unlawfully without bond since July 2, 2008 on two charges of first degree murder." Defendant essentially argued that "the only criminal offense for which a defendant may be held without bond is capital murder, and because [he] ha[d] not been properly and lawfully charged with the murder of any living person, his restraint without bond [was] illegal and unlawful."

Judge Gary E. Trawick issued a writ of habeas corpus on 1 December 2009 and ordered an evidentiary hearing to resolve the issues raised by defendant in his application.

On 8 November 2010, Judge Russell L. Lanier, Jr., held the evidentiary hearing pursuant to the writ of habeas corpus. During the hearing, the trial court heard testimony from a number of experts, including the obstetrician who was present and attending when the twins were delivered, the surgical pathologist who conducted the post-mortem examination of the twins, a professor of pathology who was the medical examiner in this case, the labor and delivery nurse who prepared the twins' delivery report, an expert in obstetrics and gynecology who reviewed the medical records and reports for the defense, and an expert in preventative medicine and obstetrics and gynecology.

Judge Lanier found all of the witnesses to be highly credible and noted that there was no material conflict in their testimony. At the end of the hearing, Judge Lanier concluded that the twins were never alive, under the law, and thus they could not have been murdered. Following that ruling, Judge Lanier granted defendant's motion to dismiss the murder charges under N.C. Gen. Stat. § 15A-954.

On 28 December 2010, the trial court entered the relief order whereby it concluded that the named victims in the murder indictments "did not

meet any of the three requirements under the common law born-alive rule. They were not viable. They were not born alive as defined under the common-law rule. They did not die as a result of injuries inflicted upon them *in utero* prior to birth." Because the named victims in the murder indictments were not alive, they could not lawfully be the victims of any homicide offense. "As a result, the murder indictments in this case do not properly charge any offense, and they *confer no jurisdiction* on any court to establish conditions of pretrial release." Thus, the trial court concluded, defendant's "current detention without bond based on pretrial release orders denying the availability of bond on the basis that [defendant] is charged with capital offenses is unlawful under N.C. Gen. Stat. § 17-1 and [defendant] is entitled to immediate relief from this unlawful restraint." Finally, the trial court concluded that the appropriate remedy was "to have the no-bond pretrial release orders in the murder cases vacated, and for [defendant] to be remanded to the custody of the Sheriff of Duplin [C]ounty under the authority of the pretrial release orders in his non-capital cases, which are unaffected by this order and remain valid."

In its 28 December 2010 order, the trial court incorporated the relief order and concluded that its ruling in the habeas proceeding "constitutes an adjudication in the defendant's favor of factual and legal issues that are essential to a successful prosecution in this case." ·

The State argues that the trial court erred in dismissing both first-degree murder indictments upon concluding: (1) that viability is a component of the common law born-alive rule, and (2) that it is impossible for a previable fetus to be born alive. For the reasons set forth below, we are unable to address the merits of the State's argument.

Habeas corpus is a procedure that allows a person to challenge an imprisonment or a restraint on his or her liberty "for any criminal or supposed criminal matter, or on any pretense whatsoever." N.C. Gen. Stat. § 17-3 (2011); N.C. Const. art. I, § 21.[1] "In habeas corpus proceedings, the court has jurisdiction to discharge petitioner only when the record discloses that the court which imprisoned him did not have jurisdiction of the offense or of the person of defendant, or that the judgment was not authorized by law." *In re Burton*, 257 N.C. 534, 541, 126 S.E.2d 581, 586 (1962). Thus, "the sole question for determination at habeas corpus hearing for alleged unlawful imprisonment is whether petitioner is then being unlawfully restrained of his liberty." *Id.* at 540, 126 S.E.2d at 586.

---

1. Art. I, § 21 concerns the writ of habeas corpus, but it does not contain this quoted language.

The trial court has jurisdiction to discharge a petitioner only when the record discloses that the court which imprisoned him did not have jurisdiction of the offense or of the person of defendant. *Id.* at 541, 126 S.E.2d at 586. Here, Judge Lanier found that the trial court (and all courts) lacked jurisdiction over defendant because the murder indictments failed to charge a proper crime. In making such determination, Judge Lanier found that the twins "were previable and incapable of survival separate and apart from their mother, the fact that they exhibited post-delivery heartbeats does not establish that they were born alive for the purposes of qualifying as proper subjects of a homicide prosecution." Accordingly, Judge Lanier concluded that the twins failed to meet any of the three requirements under the common law born-alive rule: "They were not viable. They were not born alive as defined under the common-law rule. They did not die as a result of injuries inflicted upon them *in utero* prior to birth."

We have previously concluded that "it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Clark*, 159 N.C. App. 520, 524, 583 S.E.2d 680, 683 (2003) (citation omitted). Thus, a jury should have been charged with deciding whether the twins met the requirements under the born-alive rule. However, in the case *sub judice*, a jury trial was not conducted; thus, no jury was afforded an opportunity to weigh the evidence. Instead, the record indicated that Judge Lanier weighed the sufficiency of the evidence and erroneously dismissed the charges under the guise of a lack of jurisdiction.

However, pursuant to the grand jury's indictment, the trial court was afforded proper jurisdiction over both defendant and the capital offenses charged. Thus, the trial court had proper jurisdiction to imprison defendant while awaiting trial. The trial court exceeded its authority in dismissing the charges against defendant; such dismissal essentially served as a ruling on the merits. Ultimately, only a jury shall be charged with weighing the sufficiency of the evidence; the trial court cannot usurp this duty in a habeas proceeding. Accordingly, we conclude that the trial court's 28 December 2010 order and the relief order incorporated therein are void.

Vacated and remanded.

Judges McGEE and HUNTER, JR., Robert N., concur.